Argued June 2, affirmed June 28, 1921.

## PERDEW v. DAVIDSON.

(199 Pac. 182.)

**Brokers—Contract Held to Limit Broker's Right to Compensation to Purchaser Furnished Within Thirty-day Period.**

1. Where a contract giving a broker the exclusive right for a sixty-day period to sell property, and providing that, if a buyer was furnished, the vendor should pay the broker 5 per cent commission, contained a written addition declaring that the exclusive listing should be in force for a term of sixty days, the broker to obtain commission was bound to furnish a purchaser ready, able and willing to buy within the sixty days; the written addition limiting his authority.

**Brokers—Evidence Insufficient to Show That Broker Produced Purchaser Within Time Specified.**

2. In an action by a broker for commissions, evidence, *held* insufficient to show that the broker produced a purchaser within the time limited.

---

1. On performance by a real estate broker of his contract to find a purchaser or effect an exchange of his principal's property, see note in 44 L. R. A. 593.

From Lane: G. F. SKIPWORTH, Judge.

Department 2.

November 1, 1919, T. B. Davidson entered into a written contract with the Perdew Realty Company, of which the following are the material provisions:

"I do hereby authorize the Perdew Realty Company to have exclusive and irrevocable sixty-day right to make sale of property described below, and any deal thereafter closed with party previously furnished to be in all things binding."

It was for 87.17 acres of farm land in Lane County about sixty of which were in cultivation, at the price of $12,000. The contract further recites:

"In consideration of services, if buyer is furnished ready, able and willing to purchase on above terms, or any terms accepted by me, I agree to pay 5 per cent on the purchase price to the Perdew Realty Company. * * I also agree to furnish a good and sufficient title."

The contract was on a printed form, underneath which was the following:

"It being fully understood that above exclusive listing is given on above date to be in full force and effect for a term of sixty days commencing date above written."

The last writing was signed by both parties. March 29, 1920, the land was sold to J. W. Chase, Homer Chase and Chester Chase for $12,000. On May 18, 1920, the plaintiff filed a complaint against the defendant in which it is alleged:

"That, in reliance upon defendant's promise to pay him, the plaintiff published at his own expense, the fact that the said tract of land was for sale, and during and on or about December 1, 1919, he informed Homer Chase, Chester Chase and J. W. Chase that he had the said tract of land for sale at the price of

$12,000, and used his best efforts to induce them to purchase the said tract of real estate; that thereafter the said Homer Chase, Chester Chase and J. W. Chase purchased the said tract of real estate from the defendant for the price of $12,000 upon terms satisfactory to the defendant; that the said defendant has refused to pay this plaintiff for his services the sum stipulated by the terms of the said contract or any other sum; that there is now due from defendant to plaintiff and entirely unpaid the sum of $600, with interest at 6 per cent per annum on account of the fact that this plaintiff produced to the defendant the purchasers for the said real estate.''

He prays for judgment of $600, with interest. A copy of the contract is attached to and made a part of the complaint and marked Exhibit ''A.'' The answer admits that plaintiff ''was licensed to engage in the real estate business'' and denies every other allegation of the complaint ''except as hereinafter admitted or alleged,'' and as a further and separate answer alleges the making of the agreement as substantially alleged in Exhibit ''A,'' ''with the exception that the said exhibit does not fully show the nature of said agreement; that the said agreement was written on a printed form and the words: 'And any deal thereafter closed with party previously furnished to be in all things binding' was a part of said printed form''; that because the defendant was not satisfied with the wording of the printed form, it was changed by the making and signing of the above addition. It is then alleged that:

''The said written words took the place of the printed words in the heading of the said printed form. That no parties desiring to purchase the said land were furnished by the plaintiff during the sixty days of the term of said lessor at any time before or after.''

For reply plaintiff admits that:

"Exhibit 'A' was written on a printed form with the exception of the words therein contained which were written by a typewriter; admits that the following words were contained within the printed form, to wit: 'And any deal thereafter closed with party previously furnished to be in all things binding,' " and admits that the quoted words were written at the bottom of the contract above the signatures of the parties with a typewriter.

Otherwise the reply denies all new matter in the further and separate answer. At the trial the plaintiff requested the court to give eight different instructions and in its charge to the jury, the court said this:

"Of course, under the terms of the contract, he was bound to furnish a buyer able, ready and willing within the sixty days."

The jury returned a verdict for the defendant upon which judgment was entered and the plaintiff appeals, assigning as error the refusal of the court to give each of the eight instructions requested by the plaintiff and the giving of the above instruction.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief over the name of *Messrs. Williams & Bean,* with an oral argument by *Mr. Williams.*

JOHNS, J.—The printed form of the contract recites that the company shall have "sixty day exclusive and irrevocable right to make sale of property * * and any deal thereafter closed with party previously

101 Or.—6

furnished to be in all things binding.'' At the request of the defendant the addition was made and signed by both parties, ''it being fully understood that above exclusive listing is given on above date to be in full force and effect for a term of sixty days commencing date above written.'' The court gave the following instructions:

1. ''I instruct you, if you find from a preponderance of the evidence that the plaintiff R. L. Perdew furnished Homer Chase, Chester Chase and J. W. Chase within the sixty-day limit, that is, before the contract had expired, and the said Chases were able, ready and willing to purchase the property, although the deal was not consummated until after the expiration of the sixty-day period, the plaintiff would be entitled to recover a verdict at your hands. That is to say, gentlemen of the jury, if within the sixty days, during the life of the contract, the plaintiff Perdew furnished the Chases as the purchaser for this property, and if you find that after the sixty-day period that the deal was consummated, then the plaintiff would be entitled to recover a verdict at your hands. That is, if the plaintiff was the procuring cause of the deal between the defendant Davidson and the Chases.

2. ''Of course, under the terms of the contract, he was bound to furnish a buyer, able, ready and willing within the sixty days. That is, the buyer must have been furnished within the sixty days, and if the contract was closed up after the sixty days plaintiff would be entitled to recover a verdict at your hands.

3. ''If, gentlemen of the jury, you find from the evidence in the case, that the plaintiff was not the procuring cause of the deal between Davidson and the Chases, then I instruct you that the plaintiff would not be entitled to recover a verdict at your hands. That is to say, gentlemen of the jury, if you find that the plaintiff did not furnish the Chases as purchasers of this property, why then, of course the plaintiff would not be entitled to recover.

4. "I instruct you, gentlemen of the jury, that the burden of proof rests upon the plaintiff in this case to prove by a preponderance of the evidence that he furnished Homer Chase, Chester Chase and J. W. Chase within sixty days as purchasers for this property. That is for the property described in the contract. The burden of proof rests upon the plaintiff to show that he was the procuring cause of the deal between the defendant Davidson and Chases, and that he furnished the Chases within sixty days as purchasers."

Error is assigned in the giving of this instruction:

"Of course, under the terms of the contract, he was bound to furnish a buyer able, ready and willing within the sixty days."

It will be noted that this language is only a portion of instruction No. 2, above quoted and in which the court further says, "that is, the buyer must have been furnished within the sixty days, and if the contract was closed up after the sixty days plaintiff would be entitled to recover a verdict at your hands." It was upon that theory that the court submitted the case to the jury. That is to say, if the plaintiff within the sixty days furnished a buyer for the land with whom the deal was consummated after the sixty days had expired, he would be entitled to a verdict.

1, 2. The addendum was made because the defendant objected to and would not sign the printed form contract. It must be assumed that he intended to limit rather than extend his liability, and the apparent purpose was to point out and emphasize the sixty-day limitation, as otherwise there is no material change. Its legal effect was to place a time limitation of sixty days within which the plaintiff should procure a purchaser with whom the deal was afterwards consummated, and the instructions fairly and squarely submitted that question to the jury which found for

the defendant. As we analyze the modified contract, before the plaintiff could recover he must produce a purchaser within the sixty-day limitation, and if the deal is made with the purchaser so produced within a reasonable time after the expiration of the sixty days, plaintiff would then be entitled to his commission. Appellant further contends that there is no evidence to sustain the verdict. It will be noted that the contract was made November 1, 1919, and was for a period of sixty days, that the sale was made March 29, 1920, to J. W. Chase, the father, and his two sons, Chester and Homer, and that there were seven boys in the family. There is evidence tending to show that in reality the father made the deal; that upon January 12th, his oldest son Harry, who was then engaged in taking the census, saw and walked across the land and when he came home at night said, "That's an awful good field for us fellows to rent, to work our tractor on," and that it was in this manner that the land was first called to the attention of the purchasers. This was twelve days after the sixty-day limitation had expired. The evidence shows that Harry was not a party to the purchase and did not have anything to do with it. As a result of his report they sought to find the actual owner with a view of renting it. Although it is true that for the purpose or finding who was the owner, some of them called at plaintiff's office and there learned that it was Davidson. After getting in touch with him they tried to rent it but failing in this the father and the two sons above named, later made the purchase and their testimony tends to show that the plaintiff was not the procuring cause and had nothing to do with the making of the deal. There is ample evidence to sustain the verdict. Judgment is affirmed.          AFFIRMED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.